UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------

ABETH HASHIMI,

                           Plaintiff,

                      v.

HAIG BAKLAJIAN AND EMMA BAKLAJIAN,
AS TRUSTEES OF THE HAIG BAKLAJIAN AND
EMMA BAKLAJIAN REVOCABLE LIVING
TRUST, DATED AUGUST 1, 2001, and CAFÉ
TRISKEL LTD.,

                           Defendants.

------------------------------------------------------------------

**MEMORANDUM & ORDER**
25-CV-2152 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Abeth Hashimi commenced the above-captioned action on April 17, 2025,

against Defendants Haig Baklajian[1] and Emma Baklajian, as Trustees of the Haig Baklajian and

Emma Baklajian Revocable Living Trust ("Baklajian"), Dated August 1, 2001 (the "Trust"), and

Café Triskel LTD ("Café Triskel"),[2] seeking injunctive relief for alleged violations of Title III of

---

[1] Plaintiff filed a notice of voluntary dismissal as to Defendant Haig Baklajian on May 15, 2025, (Notice of Voluntary Dismissal, Docket Entry No. 7), and the Court subsequently dismissed him as a party, (Order dated May 22, 2025).

[2] The Court notes that Defendant Café Triskel is in default, having failed to appear despite being served on April 24, 2025. (Café Triskel Summons, Docket Entry No. 10.) Following the initial conference in which Café Triskel did not appear, Magistrate Judge Vera M. Scanlon ordered Baklajian to "provide Plaintiff's counsel with any alternative contact information, aside from the corporate address already on file," and ordered Plaintiff's counsel to personally serve Café Triskel "at the place of business on or before 9/26/2025" as "the parties must make a concerted effort to facilitate the appearance of [Café Triskel]." (Order dated Aug. 15, 2025; *see* Min. Order dated Aug. 14, 2025.) Plaintiff filed an affidavit of service on August 27, 2025, affirming that the summons and Complaint were personally served on Café Triskel at 33-04 36th Avenue, Queens, NY 11106, on August 22, 2025. (Aff. of Service, Docket Entry No. 19.) Although the August 22, 2025 affidavit of service was initially filed unsigned and undated,

the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's

Accessibility Guidelines, 28 C.F.R. Part 36 ("ADDAG").  (Compl., Docket Entry No. 1.)

On October 10, 2025, Baklajian moved to dismiss the Complaint for lack of subject-

matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and

Plaintiff opposed the motion.[3]  For the reasons explained below, the Court dismisses the

Complaint and grants Plaintiff leave to file an amended complaint.[4]

## I.   Background

Plaintiff currently resides in Flushing, New York in Queens County.[5]  (Compl. ¶ 2.)

Plaintiff is a qualified individual with disabilities under the ADA, suffering from a congenital

---

Plaintiff filed a signed and dated version on February 6, 2026.  (Revised Aff. of Service, Docket
Entry No. 26; *see* Order dated Feb. 3, 2026.)

[3]  (Def.'s Mot. to Dismiss ("Def.'s Mot."), Docket Entry No. 23; Decl. of B. Pollina, Esq. in
Supp. of Def.'s Mot. ("Pollina Decl."), appended to Def.'s Mot., Docket Entry No. 23-1; Def.'s
Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), appended to Def.'s Mot., Docket Entry No. 21-6;
Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry No. 22; Def.'s Reply in Supp. of Def.'s
Mot. ("Def.'s Reply"), Docket Entry No. 24.)
The Court notes that Plaintiff's opposition brief refers to a plaintiff by the name of Samuel
Lopez, not Abeth Hashimi, includes an erroneous caption, and makes references to Brooklyn, while
the subject property and Plaintiff are both located in Queens, N.Y.  (Pl.'s Opp'n 1–3; *see also* Def.'s
Reply 6 n.1.)  In addition, the erroneous caption also fails to identify Haig and Emma Baklajian as
defendants in their capacities as trustees.  (Pl.'s Opp'n 1–3; *see also* Def.'s Reply 6 n.1.)  Counsel
must read any amended complaint prior to filing it in order to avoid these types of errors.

[4]  Café Triskel has not appeared in this action.  However, for the reasons explained
below, the Court dismisses the claims against Café Triskel for lack of subject matter jurisdiction.
*See Lovell v. Consol. Edison Co. of N.Y., Inc.*, 758 F. App'x 222, 224 (2d Cir. 2019) ("Because
the standing issue goes to the Court's subject matter jurisdiction, it can be raised *sua sponte*."
(quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care,
L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005))); *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444,
449 (2d Cir. 2013) (noting that a court may raise the issue of subject matter jurisdiction *sua
sponte*).

[5]  The Court relies "solely on the pleadings — that is, the allegations of the Complaint
and any exhibits attached to it" in deciding Baklajian's motion to dismiss for lack of standing
under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *Lugo v. City of Troy*, 114 F.4th 80,

2

neuromuscular disorder, known as central nuclear myopathy, "which is characterized as a default in the cell structure of voluntary muscles and as a result is bound to ambulate in a wheelchair." (*Id.*)  The Trust, of which Haig and Emma Baklajian are trustees, transacts business in the State of New York and within this judicial district as the owner of the property located at 33-04 36th Avenue, Queens, NY 11106 (the "Subject Property").  (*Id.* ¶ 3.)  Café Triskel is a corporation that transacts business in the State of New York and within this judicial district as the lessee and owner/operator of the business located at the Subject Property, named "Café Triskell."  (*Id.* ¶ 4.)

The Subject Property is in a neighborhood where Plaintiff "dines out two to three times per month" and which Plaintiff passes "at least once per week when he is doing errands, visiting family and friends throughout the borough, and looking to drink and eat out."  (*Id.* ¶ 7.)  Plaintiff "has partaken at, and in, nearly all of the neighboring restaurants surrounding the [Subject Property] that are all without obstructions about twice per month, including but not limited to Escola Corp's Restaurant, Psari, Mad Donkey Bar & Grill and Arepas Grill."  (*Id.*)  Plaintiff lives "only several miles" from the Subject Property.[6]  (*Id.*)

---

87 (2d Cir. 2024) (citing *Carter v. HealthPort Techs., Inc.*, 822 F.3d 47, 56 (2d Cir. 2016)); *New York v. U.S. Dep't of Agric.*, 454 F. Supp. 3d 297, 305–06 (S.D.N.Y. 2020) ("When a Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the '[p]leading'), the plaintiff has no evidentiary burden. The task of the district court is to determine whether the [p]leading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" (second and third alterations in original) (quoting *Carter*, 822 F.3d at 56–57)); *see Kelsey v. Kessel*, No. 24-1105, 2025 WL 1324213, at *1 (2d Cir. May 7, 2025) (summary order) ("A facial challenge to subject matter jurisdiction 'is based solely on the pleadings – that is, the allegations of the complaint and any exhibits attached to it.'" (quoting *Lugo*, 114 F.4th at 87)).

[6]  Baklajian argues that "Google Maps reports that the distance between Flushing, New York [(where Plaintiff lives)] and the [Subject Property] by car is approximately 6.6 miles." (Def.'s Mem. 3; *see* Distance Depiction, annexed to Poll. Decl. as Ex. D, Docket Entry No. 23-5.)  "[A]ccording to the travel time estimates supplied by Google Maps, a morning car trip from Flushing to the [Subject Property] is expected to take between [nineteen] and [twenty-one] minutes, while a morning trip by public transportation is expected to take between [thirty-nine]

Plaintiff has visited the Subject Property twice: first, around the middle of October of 2024, and second, on December 20, 2024. (*Id.* ¶ 5.) During these occasions, Plaintiff encountered "a set of concrete steps directly within the entrance, interpolating between the outward swinging entrance door and the hallway of the restaurant, and that which was impassable for wheeled ambulation." (*Id.*) This "architectural barrier" "constrained, hindered and thwarted" "Plaintiff's ability to ambulate through the entrance of the Subject Property" and "caused Plaintiff to turn back." (*Id.* ¶¶ 5, 10.) Plaintiff "affirms that he would eat at [Café Triskell] and avail himself of the goods and services offered to the public, were it not for the structural barriers inhibiting his ability to enter the subject facility." (*Id.* ¶ 7.) Plaintiff "plans to return to the Subject Property to avail himself of the goods and services offered to the public at the Subject Property in the coming months, and thereby determine whether the Subject Property is ADA compliant or if the Defendant's discriminatory policy of wanton indifference to Plaintiff's civil rights continues to be promulgated by [sic] these Defendants" and "will continue to dine out in the neighborhood," with specific plans "to visit [the] [S]ubject [P]roperty this summer and autumn with family and friends for nights out, and holidays and events." (*Id.* ¶¶ 6, 10.)

In the Complaint, Plaintiff alleges Defendants discriminated against him by failing to comply with the ADA, listing twenty-nine different "unlawful physical barriers, dangerous conditions and ADA violations which preclude and/or limit Plaintiff's ability to access the [Subject Property] and full and equal enjoyment of the goods, services offered at the [Subject Property]." (*Id.* ¶ 16.) These alleged barriers include: inaccessible entrances, a missing ramp at the entrance, inaccessible exterior dining tables, inaccessible interior dining tables, noncompliant

---

and [fifty-one] minutes." (Def.'s Mem. 3; *see* Distance Depiction.) Plaintiff does not dispute this in his briefing. (*See generally* Pl.'s Opp'n.)

signage identifying restrooms, inaccessible restrooms, a noncompliant door knob at the restroom door, a noncompliant door lock at the restroom door, an inaccessible water closet in the restroom, the lack of required grab bars on the rear and side walls of the water closet in the restroom, an inaccessible flush control in the water closet, an inaccessible lavatory in the restroom, an inaccessible hand dryer in the restroom, a noncompliant mounted hand dryer in the restroom, an inaccessible mirror in the restroom, and a noncompliant mounted mirror in the restroom.  (*Id.*)

## II.   Discussion

### a.   Standards of review

#### i.   12(b)(1)

A district court may dismiss an action for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it."  *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 37 (2d Cir. 2025) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, N.Y.*, 98 F.4th 386, 391 (2d Cir. 2024) (quoting *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021)); *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms.,S.à.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015)), *cert. denied*, 144 S. Ct. 1095 (2024); *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021) (quoting *Makarova*, 201 F.3d at 113).  Courts must "accept the complaint's material allegations as true, and . . . draw all reasonable inferences in the plaintiffs' favor," *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 113 (2d Cir. 2024) (quoting *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017)), but "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to

decide issues of fact by reference to evidence outside the pleadings," *Talarico Bros. Bldg. Corp. v. Union Carbide Corp.*, 73 F.4th 126, 136 (2d Cir. 2023) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)); *Harty v. W. Point Realty, Inc.* (*Harty*), 28 F.4th 435, 441 (2d Cir. 2022) ("It is only where 'jurisdictional facts are placed in dispute' that the court has the 'obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" (first quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); and then citing *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999))); *see Iacovo v. Magguilli*, No. 24-CV-4372, 2025 WL 1135471, at *3 (E.D.N.Y. Apr. 17, 2025) ("In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." (quoting *Tandon*, 752 F.3d at 243)). Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon*, 752 F.3d at 243 (quoting *Makarova*, 201 F.3d at 113); *AMTAX Holdings*, 136 F.4th at 37 ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (quoting *Makarova*, 201 F.3d at 113)).

##### ii. Article III standing

"The Constitution limits federal courts to deciding 'Cases' and 'Controversies.'" *Bost v. Illinois State Bd. of Elections*, 607 U.S. ---, ---, 146 S. Ct. 513, 523 (2026) (Barrett, J., concurring) (quoting U.S. Const. art. III, § 2); *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 295 (2022) (quoting same). "'Standing to sue is a doctrine' that 'limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.'" *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 183–84 (2d Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)); *see also Packer ex rel. 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC*, 105 F.4th 46, 51 (2d Cir. 2024) ("Article III of the Constitution requires that

6

plaintiffs establish standing to sue in federal court."). "To establish constitutional standing, 'a plaintiff must show (i) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" *DirecTV, LLC v. Nexstar Media Grp., Inc.*, 162 F.4th 295, 306 (2d Cir. 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Cudjoe v. Building Industry Elec. Contractors Ass'n*, No. 24-921, 2025 WL 655580, at *1 (2d Cir. Feb. 28, 2025) (summary order) (quoting *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020)) (same); *Packer*, 105 F.4th at 51 (quoting *TransUnion LLC*, 594 U.S. at 423) (same); *Saba Cap. Cef Opportunities 1, Ltd. Nuveen Floating Rate Income Fund*, 88 F.4th 103, 110 (2d Cir. 2023) (quoting *Thole*, 590 U.S. at 540) (same); *Liu v. Democratic Nat'l Comm.*, No. 21-3021, 2022 WL 4372587, at *1 (2d Cir. Sep. 22, 2022) (quoting *TransUnion LLC*, 594 U.S. at 423) (same); *Calcano v. Swarovski N.A. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *TransUnion LLC*, 594 U.S. at 423) (same); *Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 187 (2d Cir. 2016)) (same). "An injury in fact must be 'particularized,' and it must be 'concrete.'" *Harty*, 28 F.4th at 442 (quoting *Spokeo, Inc.*, 578 U.S. at 340).

"[S]tanding is required for subject matter jurisdiction." *James v. Willis*, No. 21-501, 2022 WL 481812, at *1 (2d Cir. Feb. 17, 2022) (summary order) (citing *Strubel*, 842 F.3d at 187). "If plaintiffs lack Article III standing, a court has no subject[-]matter jurisdiction to hear their claim." *Karkare on behalf of JN v. Int'l Assoc. of Bridge, Structural, Ornamental & Reinforcing Iron Workers Local 580*, 140 F.4th 60, 64 (2d Cir. 2025) (alteration in original) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)); *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 282–83 (2d Cir. 2023) (quoting same); *Otrompke v. First Dep't Comm. on Character & Fitness*,

7

No. 20-4107, 2021 WL 5764221, at *1 (2d Cir. Dec. 6, 2021) (summary order) ("A district court lacks jurisdiction 'when . . . the plaintiff lacks constitutional standing to bring the action.'" (quoting *Cortlandt St. Recovery Corp.*, 790 F.3d at 417)); *see also Citizens United to Protect Our Neighborhoods*, 98 F.4th at 391 ("A district court properly dismisses an action for lack of subject-matter jurisdiction under Rule 12(b)(1) 'if the court lacks the statutory or constitutional power to adjudicate it, such as when the plaintiff[s] lack[] constitutional standing to bring the action.'" (alterations in original) (quoting *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021))). "Before deciding any case on the merits, a district court must determine that it has subject matter jurisdiction over the matter. Therefore, for a case to proceed, the party invoking federal jurisdiction must plausibly plead that it has standing to sue." *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 205–06 (2d. Cir. 2019) (first citing *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014); and then citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016)); *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (Assessing plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *Calcano*, 36 F.4th at 74 ("Although we generally accept the truth of a plaintiff's allegations at the motion to dismiss stage, the plaintiff still 'bears the burden of alleging facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." (alternation in original) (quoting *Cortlandt St. Recovery Corp.*, 790 F.3d at 417)); *Pan v. Whitaker*, 351 F. Supp. 3d 246, 249–50 (E.D.N.Y. 2019) ("[F]ederal courts have a continuing and independent duty to ensure that they possess subject matter jurisdiction, and must dismiss a case when they find subject matter jurisdiction lacking."). The court "need not credit 'a legal conclusion couched as a factual allegation' or a 'naked assertion devoid of further factual enhancement,'" but must instead "refer to a complaint's 'factual context' to discern whether to accept 'a complaint's conclusory statements.'" *Calcano*, 36 F.4th at 75 (first quoting *Ashcroft*,

8

556 U.S. at 678; and then quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011)).

"[A] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Choi's Beer Shop, LLC v. PNC Merch. Servs. Co., L.P.*, 855 F. App'x 20, 21 (2d Cir. 2021) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)); *see Ct. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 448 (2d Cir. 2021) (quoting same). To seek injunctive and declaratory relief, a plaintiff's standing "depend[s] on whether [that plaintiff] [is] likely to suffer future injury" based on the alleged conduct. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *Amnesty Int'l USA v. Clapper*, 638 F.3d 118, 136 (2d Cir. 2011) (quoting *id.*). The risk of future harm must be "real and immediate," although it need not be certain. *Shain v. Ellison*, 356 F.3d 211, 215–16 (2d Cir. 2004) (citations omitted).

### b. Plaintiff lacks standing under the ADA

Baklajian argues the Complaint "is of the cut-and-paste variety that relies on conclusory allegations of injury that fall far short of establishing standing" as Plaintiff "fails to allege both past injury and a plausible intention to return to the [Subject Property]." (Def.'s Mem. 1–2.)

Plaintiff argues Baklajian's motion is "premised on extrinsic exhibits that are at most tangential, and a fallacious series of arguments based on preclusions of facts and misrepresentations of [sic] *stare decisis* that in no way diminish Plaintiff's standing — nevermind surmount the Court's inherent subject matter jurisdiction." (Pl.'s Opp'n 4.) In support, Plaintiff argues that Second Circuit case law supports: (1) that he suffered a "concrete and particularized injury" when he encountered a wheelchair-inaccessible entrance at the Subject Property which deterred him from entering, (*id.* at 9–13); and (2) that the Complaint "clearly establishe[s]" "a concrete intent to return" having plead two past visits, a "probable plan to visit

9

the restaurant" in the future, and previous dining experiences in the surrounding area which he "travels through . . . regularly," (*id.* at 14–15).

A plaintiff has standing to seek injunctive relief for disability discrimination where "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that plaintiff intended to return to the subject location." *Calcano*, 36 F.4th at 74 (alteration in original) (quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013)); *Bernstein v. City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015) (per curiam) (quoting same). [7] "These considerations may assist courts in determining whether an alleged prospective injury is sufficiently 'concrete and particularized.'" *Calcano*, 36 F.4th at 74 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A plaintiff must make a "substantial showing before determining that future encounters are likely." *Constance v. State Univ. of N.Y. Health Sci. Ctr. at Syracuse*, 166 F. Supp. 2d 663, 666 (N.D.N.Y. 2001) (collecting cases).

> ### i. Plaintiff sufficiently pleads past injury as to the Subject Property's inaccessible entrance, and may seek removal of all other noncompliant conditions at the Subject Property

Baklajian argues Plaintiff fails to plead "past injury" because the "allegations in the Complaint are vague, conclusory, and insufficient to raise a reasonable inference of 'past injury.'" (Def.'s Mem. 5.) She argues that "[t]he Complaint presents a list of 29 alleged ADA

---

[7] Baklajian challenges Plaintiff's standing only as to the first and third factors — "alleged injury under the ADA" and "intention to return to the subject location." (*See generally* Def.'s Mem.; Def.'s Reply.) As Baklajian does not contest the second factor — "discriminatory treatment would continue" — the Court does not include an analysis of that standing requirement. *See Hirsch v. Campaniello Soho, Inc.*, No. 14-CV-5097, 2015 WL 678662, at *3 (S.D.N.Y. Feb. 17, 2015) (not addressing whether "[p]laintif has adequately established that any discriminatory treatment [would] continue" as defendants did not contest it).

violations (not including sub-parts) devoid of any factual assertions connecting each purported violation to Plaintiff's alleged personal experience at the [Subject Property]." (*Id.* at 3, 5–7; *see* Def.'s Reply 3–6.)  In support, Baklajian argues that "the Complaint [ ] makes allegations about alleged characteristics of the [Subject Property] that [Plaintiff] indisputably did not encounter . . . identif[ying] [ ] a host of alleged violations affecting the interior of the [Subject Property], including the dining counter and restrooms, even though Plaintiff acknowledges he never entered the premises." (Def.'s Mem. 3, 5–7 (emphasis omitted); *see* Def.'s Reply 3–6.)  Baklajian acknowledges that "the only alleged ADA violation that Plaintiff claims to have personally encountered is the set of concrete steps at the entrance to the [Subject Property]." (Def.'s Reply 3–6.)  In response to Plaintiff's "deterrence theory," Baklajian argues that "*Kreisler* did not hold, as a blanket rule, that a plaintiff who alleges encountering one ADA violation may then shoehorn in countless other unfounded alleged ADA violations that he neither encountered nor for which he pleaded the basis of his knowledge." (*Id.* at 4.)

Plaintiff contends that accepting the allegations in the Complaint as true, he has alleged "multiple past injuries" to his rights having visited the Subject Property twice, which are "actual and particularized injuries." (Pl.'s Opp'n 10.)  Further, having pled an inability to enter the Subject Property after encountering an inaccessible entrance, Plaintiff argues Second Circuit case law has established that "Plaintiff need not even attempt to overcome the architectural barrier, as deterrence alone can constitute concrete injury." (*Id.* at 11 (citing to *Kreisler*, 731 F.3d at 187–89).)

"A plaintiff can demonstrate past injury under the ADA by showing (1) 'the direct injury from personally encountering disability-based discrimination at [d]efendant's property' and (2) 'deterrence from using [d]efendant's property because it is not ADA compliant.'" *Valdez v. Singlee Lau, Inc.*, No. 24-CV-9150, 2025 WL 3074254, at *2 (S.D.N.Y. Nov. 4, 2025) (quoting

11

*Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 173 (S.D.N.Y. 2006)); *Feltzin v. Triangle Props. #1, LLC* (*Feltzin*), No. 14-CV-5131, 2016 WL 11599264, at *4 (E.D.N.Y. Dec. 15, 2016) (quoting same).  "Courts both in this Circuit and elsewhere have held that, as a bare minimum, a plaintiff can establish a direct injury sufficient to support standing only if she 'personally encounters the barrier to access' that caused her injury."  *Feltzin*, 2016 WL 11599264, at *4 (quoting *Panzica v. Mas-Maz, Inc.*, No. 05-CV-2595, 2007 WL 1732123, at *3 (E.D.N.Y. June 11, 2007)) (collecting cases).  "In lieu of a direct injury, an allegation that a physical access barrier deters a plaintiff from frequenting a restaurant is sufficient to show a past ADA injury."  *Valdez*, 2025 WL 3074254, at *2 (citing *Kreisler*, 731 F.3d at 188); *see Calcano*, 36 F.4th at 74 n.4 ("A plaintiff 'need not attempt to overcome an obvious barrier' to allege an injury in fact.' (quoting *Kreisler*, 731 F.3d at 188)); *Kreisler*, 731 F.2d at 188 ("[D]eterrence constitutes an injury under the ADA . . . .").

"[O]nce a plaintiff establishes standing with respect to one barrier in a place of public accommodation, that plaintiff may bring ADA challenges with respect to all other barriers on the premises that affect the plaintiff's particular disability."  *Kreisler*, 731 F.3d at 188; *see Brown v. Mermaid Plaza Assocs. LLC*, No. 13-CV-760, 2018 WL 2722454, at *7 (E.D.N.Y. Mar. 8, 2018) (quoting *id.*); *Hurley v. Tozzer, Ltd.*, No. 15-CV-2785, 2018 WL 1872194, at *4 (S.D.N.Y. Feb. 2, 2018) ("It is well established [in the Second Circuit] that an ADA plaintiff has standing to challenge every single architectural barrier inside a premises, so long as he or she has suffered an actual injury from at least one barrier."); *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 200 (S.D.N.Y. 2016) ("Having alleged that she encountered a barrier at [the d]efendants' store, [the p]laintiff 'may bring ADA challenges with respect to all other barriers on the premises that affect [her] particular disability." (alteration in original) (quoting *Kreisler*, 731 F.3d at 188)).  "Once a plaintiff has established standing to sue for at least one barrier under the ADA, he has

12

standing to challenge a list of alleged barriers *regardless of whether he has personally encountered them.*" *Harty v. Spring Valley Marketplace LLC* (*Spring Valley Marketplace LLC*), No. 15-CV-8190, 2017 WL 108062, at *7 (S.D.N.Y. Jan. 9, 2017) (emphasis added) (finding that "[e]ven assuming, *arguendo*, that [the p]laintiff only personally experienced one of these aforementioned barriers, he still maintains standing to pursue injunctive relief because under the ADA deterrence may constitute an injury"); *see Pierre v. Smith St. Bagels Inc.*, No. 23-CV-7901, 2025 WL 2371077, at *5 (E.D.N.Y. July 3, 2025) (quoting *id.*), *report and recommendation adopted*, 2025 WL 2371020 (E.D.N.Y. Aug. 14, 2025); *see also Kreisler*, 731 F.3d at 189 (holding the plaintiff "need not personally encounter *each* ADA violation within the [subject property] in order to seek its removal" (emphasis added)). "Some courts have anchored this same test in the text of the ADA, which states that a person with a disability does not need 'to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions.'" *Castillo v. John Gore Org., Inc.*, No. 19-CV-388, 2019 WL 6033088, at *3 (E.D.N.Y. Nov. 14, 2019) (quoting 42 U.S.C. § 12188(a)(1)) (collecting cases); *see Kreisler*, 731 F.3d at 189 ("This rule is also consistent with the ADA's mandate that disabled individuals need not 'engage in a futile gesture if such a person has actual notice that [the private entity] does not intend to comply with [ADA] provisions." (quoting 42 U.S.C. § 12188(a)(1))).

As Baklajian acknowledges, Plaintiff has sufficiently pleaded that he directly encountered and personally observed an inaccessible entrance, *i.e.*, "a set of concrete steps directly within the entrance . . . which was impassable for wheeled ambulation," which deterred him from entering the Subject Property. (Compl. ¶¶ 5, 16(1)–(7); *see* Pl.'s Opp'n 10–11; Def.'s Reply 4–5.) This constitutes a "concrete and particularized" injury to establish Article III standing. *See Kreisler*, 731 F.3d at 188 ("[T]he fact that the wheelchair-inaccessible entrance

13

deterred [plaintiff] from accessing the [subject property] established a concrete and particularized injury."); *Rouse v. Broadway & Cooper LLC*, 753 F. Supp. 3d 153, 164–65 (E.D.N.Y. 2024) (finding plaintiff satisfied standing by alleging he visited the subject property but was unable to enter because of structural barriers, including, an inaccessible entrance); *Woods v. Kaztle Walsh, LLC*, No. 22-CV-525, 2023 WL 6442064, at *3 (N.D.N.Y. Oct. 3, 2023) (finding the plaintiff sufficiently alleged past injury by identifying "mobility-related barriers at the [p]roperty" that caused the plaintiff difficulty in accessing the property); *Gannon v. 31 Essex St. LLC* (*Gannon*), No. 22-CV-1134, 2023 WL 199287, at *3 (S.D.N.Y. Jan. 17, 2023) (the plaintiff established past injury under the ADA "by asserting that he was denied full and equal access to the property when he was unable to enter the bakeshop as a result of structural barriers"); *Shalto v. SFL Pizza Crp.*, No. 19-CV-1687, 2020 WL 3960506, at *1 (E.D.N.Y. July 13, 2020) (affirming on reconsideration that allegations of the plaintiff having been deterred from eating at the restaurant by the step at the entrance was sufficient to establish past injury).

Having established standing with respect to one barrier at the Subject Property, Plaintiff may bring ADA challenges, under a deterrence theory of injury, with respect to all other barriers on or in the Subject Property that impact his disability.[8] *See Kreisler*, 731 F.3d at 188

---

[8] As Baklajian argues, except as to the barriers at the entrance of the Subject Property for which Plaintiff has established past injury, the Complaint does not contain any information regarding the other alleged non-compliant conditions at the Subject Property and Plaintiff's papers are silent as to how Plaintiff came to know of the alleged interior violations. (*See* Def.'s Mem. 3, 5–6; Def.'s Reply 1, 3–5; *see generally* Compl.; Pl.'s Opp'n.) Specifically, Plaintiff does not explain how he learned of the exterior dining tables or any of the interior conditions, especially considering Plaintiff admittedly did not enter the Subject Property. (*See* Compl. ¶ 10 (Plaintiff encountered the steps which "the wheelchair could not safely traverse" forcing Plaintiff "to turn back.").) In *Kreisler v. Second Avenue Diner Corp.*, 731 F.3d 184 (2d Cir. 2013), the Second Circuit held that the plaintiff established past injury as to the inaccessible entrance and thus had standing to seek removal of all barriers inside the subject property related to his disability. *Id.* at 188. The court's holding was supported by Kreisler's testimony that, "prior to

14

(establishing that "deterrence constitutes an injury under the ADA" and "because [the plaintiff] ha[d] standing to pursue injunctive relief as to the [d]iner's entrance, he ha[d] standing to seek removal of all barriers inside the [d]iner related to his disability that he would likely encounter were he able to access the [d]iner"); *id.* at 189 (holding that the plaintiff "need not personally encounter each ADA violation within the [d]iner in order to seek its removal"); *Jiminez v. GWB Acquisitions, LLC*, No. 24-CV-7385, 2026 WL 252527, at *5 (S.D.N.Y. Jan. 30, 2026) (finding standing where the plaintiff had "actual knowledge" of at least one barrier at the subject premises because "a plaintiff with standing 'need not personally encounter each ADA violation . . . to seek its removal'" (first quoting *Lowell v. Lyft, Inc.*, 352 F. Supp. 2d 248, 255 (S.D.N.Y. 2018); and then quoting *Kreisler*, 731 F.3d at 188–89)); *Dunston v. Babushka LLC*, No. 24-CV-2969, 2024 WL 5164694, at *5 (E.D.N.Y. Dec. 19, 2024) (holding that where the plaintiff encountered an inaccessible entrance twice, she had standing to bring claims to the other structural barriers, including inaccessible exterior dining tables and benches, interior dining tables and dining counter, and restroom), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Jan. 13, 2025); *Brown*, 2018 WL 2722454, at *6 (holding that standing was satisfied where the "plaintiff personally encountered at least some of the current

---

commencing the lawsuit, his attorney informed him of the [d]iner's interior architectural barriers" in addition to the inaccessible entrance. *Id*. at 188 n.5.

For the other reasons explained below, the Court dismisses Plaintiff's claims and grants leave to amend. In his amended complaint, Plaintiff must specify his knowledge of the other alleged noncompliant conditions that he does not allege to have directly encountered — explaining whether he personally observed or learned from a third party about these alleged noncompliant conditions — including the violations relating to the exterior dining tables, the interior dining tables, the interior restrooms, and more.

architectural barriers" and thus could bring "[additional] ADA challenges with respect to all other barriers on the premises that affect [her] particular disability").[9]

### ii.   Plaintiff fails to plead a reasonable inference of intent to return to the Subject Property

Baklajian argues that Plaintiff "fails to plausibly allege an intention to return to the Subject Property." (Def.'s Mem. 7.)  First, Plaintiff alleges in the Complaint only a "naked

---

[9]  The Court notes that Plaintiff's briefing fails to cite to any case other than *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013) to support his deterrence theory of past injury. (*See* Pl.'s Opp'n 10–11.)  In addition, Plaintiff argues that Baklajian's cited cases, *Hashimi v. Court Diner Inc.*, No. 23-CV-5811, 2024 WL 4225781 (E.D.N.Y. Sep. 18, 2024) and *Feltzin v. Triangle Props. #1* (*Feltzin*)*, LLC*, No. 14-CV-5131, 2016 WL 11599264 (E.D.N.Y. Dec. 15, 2016), have "holdings antithetical to Second Circuit holdings, and thus [are] entirely discordant." (Pl.'s Opp'n 12–13.)  This argument is plainly unpersuasive and unsupported.

The Court notes the persuasiveness of *Court Diner* which involves the same Plaintiff and a virtually identical complaint, as pointed out by Baklajian. (Def.'s Mem. 2, 7.)  Comparing the Complaint in this case to the complaint in *Court Diner*, (*see Hashimi v. Court Diner Inc.* Compl. ("*Court Diner* Compl."), annexed to Poll. Decl. as Ex. B, Docket Entry No. 23-3), Plaintiff's allegations are seemingly uniform, and Plaintiff similarly lists a long list of alleged non-compliant conditions without providing more information to prove actual knowledge of such conditions. (*Compare* Compl. ¶ 16 with *Court Diner* Compl. ¶ 14.)

The Court finds, however, a distinguishing aspect in the complaints which warrant a slightly differing conclusion: Plaintiff did not plead any structural barrier he personally encountered in *Court Diner* while he did in this case.  The *Court Diner* Compl. only states "[P]laintiff's ability to ambulate through the entrance of the [s]ubject [p]roperty was constrained, hindered, and thwarted by the structural barriers, that which prevented access to the public accommodation." (*Compare* Compl. ¶¶ 5, 10 with *Court Diner* Compl. ¶¶ 4, 11.)  Thus, the court in *Court Diner* found Plaintiff failed to establish standing as to the diner's entrance, "offer[ing] no description about the structural barriers or the [d]iner's entrance and exit," and all other alleged violations, as it was "not clear which, if any, of the thirty-six alleged violations . . . Plaintiff personally encountered." *Court Diner*, 2024 WL 4225781 at *2–3.  In the Complaint in this case, Plaintiff alleges specific details and direct injury regarding the Subject Property's unnavigable entrance. (Compl. ¶ 5.)  Therefore, while the court in *Court Diner* dismissed the entire complaint for failure to plead past injury, the Court finds Plaintiff has adequately pled past injury by alleging a direct encounter with the inaccessible entrance, with supporting factual details.  For that reason, *Court Diner* does not impact the Court's analysis of past injury and is not "antithetical" as Plaintiff claims because it does not address a deterrence theory of injury.

*Feltzin*, on the other hand, specifically dealt with "whether plaintiff ha[d] alleged a direct injury" as "plaintiff's brief [did] not argue that his pleadings and affidavit should be construed as advancing a deterrence-based theory of injury." *Feltzin*, 2016 WL 11599264, at *5. This case also has no impact on the Court's analysis of Plaintiff's deterrence theory.

16

assertion that 'Plaintiff intends to visit the [Subject Property] again in the near future to utilize all of the goods and services offered therein,'" (Def.'s Mem. 8 (quoting Comp. ¶ 14)), which is deficient as "vague, some day intentions do not support a finding of actual or imminent injury required by Article III," (*id.* (internal quotation marks and citation omitted)).  Second, Baklajian contends that Plaintiff "fails to explain what is distinctive about [Café Triskell] . . . or why [Plaintiff] wants to visit the place so urgently . . . ." (*Id.* (internal quotation marks omitted) (quoting *Gannon v. Hua Da Inc.* (*Hua Da Inc.*), No. 22-CV-1650, 2023 WL 2664012, at *3 (S.D.N.Y. Mar. 28, 2023)).)  Lastly, Baklajian argues that "Plaintiff's 'assertions of proximity and prior visits are vague, lacking in support, and do not plausibly establish that Plaintiff[ ] intended to return to the [S]ubject [Property].'" (*Id.* at 8–9 (internal quotation marks omitted) (quoting *Calcano*, 36 F.4th at 75).)  In support, Baklajian argues that (1) "Plaintiff's alleged patronage of other restaurants in the neighborhood" fails to "establish his reasons for desiring to patronize [Café Triskell] uniquely," (2) Plaintiff's past two visits to the Subject Property does not "support the inference that he intend[s] to return to the [Subject Property]," and (3) Plaintiff's failure to identify "what he means by the neighborhood or how broadly such a term is construed" provides the Court with "no metric at all by which to gauge the proximity of other restaurants Plaintiff alleged visited to Plaintiff's home or to the café." (Def.'s Reply 8 (internal quotation marks and citations omitted).)  Baklajian asserts that the Second Circuit in *Calcano* and *Kreisler* "instructed courts to scrutinize the plaintiff's proximity to the subject location in assessing whether a complaint plausibly establishes that the plaintiff intended to return." (Def.'s Mem. 8.)  Lastly, Baklajian contends that while the Complaint alleges that Plaintiff lives "only several miles" from the Subject Property, travel time estimates report a morning trip from Flushing would take between nineteen and twenty-one minutes by car, and between thirty-nine and fifty-one minutes by public transportation. (*Id.* at 3, 8–9; *see* Distance Depiction.)

17

Plaintiff argues that accepting the allegations included in the Complaint as true is sufficient to establish standing. (Pl.'s Opp'n 15–17.) First, Plaintiff alleges in the Complaint that "Plaintiff: a) dines out in this neighborhood multiple times per month; b) has dined at and accessed nearly all adjacent restaurants that are compliant with the ADA; and c) avers that he would visit and eat at the public accommodation were it not for barriers to access." (*Id.* at 15 (citing Compl. ¶ 7).) Plaintiff also alleges that the Complaint "set[s] forth a plausible, credible, and even probable plan to visit the restaurant for 'specific events' and 'with certain friends and family,' as well as a factual claim that he will continue to dine at the neighboring restaurant[s]." (*Id.* (quoting Compl. ¶ 10).) Lastly, Plaintiff argues that in the Complaint, he asserts that he "travels through this neighborhood regularly, has partaken of the services offered in nearly all of the surrounding public accommodations, and thereon intends to visit the facility again." (*Id.* (quoting Compl. ¶ 14).)

"[T]he focus of the third factor — *i.e.*, intent to return based on past visits and proximity — is to ensure that 'the risk of harm is sufficiently imminent and substantial' to establish standing." *Calcano*, 36 F.4th at 74–75 (quoting *TransUnion LLC*, 594 U.S. at 415). "[C]onclusory allegations of intent to return and proximity are not enough — in order to 'satisfy the concrete-harm requirement' and to 'pursue forward-looking, injunctive relief,' [p]laintiff[] must establish a 'material risk of future harm' that is 'sufficiently imminent and substantial.'" *Id.* at 72 (quoting *TransUnion LLC*, 594 U.S. at 435)); *see Woods*, 2023 WL 6442064, at 3 ("In particular, focus on the plaintiff's 'intent to return based on past visits and proximity' 'ensure[s] that "the risk of harm is sufficiently imminent and substantial" to establish standing.'" (internal quotation marks omitted) (alteration in original) (quoting *id.* at 74)); *Lowell v. Lyft, Inc.*, No. 17-CV-6251, 2023 WL 2622925, at *3 (E.D.N.Y. Mar. 24, 2023) ("Courts in this Circuit have linked the third element — intent to return — to the constitutional requirement that an injury in

18

fact be imminent rather than conjectural or hypothetical." (citing *Castillo*, 2019 WL 6033088, at *4)). A plaintiff can satisfy this requirement "if they show a plausible intention or desire to return to the place but for the barriers to access.'" *Feltzin v. Stone Equities, LLC* (*Stone Equities*), No. 16-CV-6457, 2018 WL 1115135, at *10 (E.D.N.Y. Feb. 8, 2018) (quoting *Shariff v. Shannel Realty of Queens, LLC*, No. 11-CV-1499, 2013 WL 5519978, at *2 (E.D.N.Y. Sep. 30, 2013)), *report and recommendation adopted*, 2018 WL 1114682 (E.D.N.Y. Feb. 26, 2018). "[T]he central inquiry is not whether a complaint pleads the magic words that a plaintiff 'intends to return,' but if, 'examined under the totality of all relevant facts,' the plaintiff plausibly alleges 'a real and immediate threat of future injury.'" *Calcano*, 36 F.4th at 65 (internal quotation marks omitted) (quoting *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1233 (11th Cir. 2021) (finding professing only "an intent to return to the places previously visited is not enough to establish standing for prospective relief" (internal quotation marks and citation omitted))). "Intent to return to the place of injury 'some day' is insufficient." *Small v. Gen Nutrition Cos., Inc.*, 388 F. Supp. 2d 83, 87 (E.D.N.Y. 2005) (citing *Lujan*, 504 U.S. at 564).

"While there is no precise degree of likelihood of return that is necessary to show imminence, the following factors are relevant: '(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Castillo*, 2019 WL 6033088, at *4 (quoting *Stone Equities*, 2018 WL 1115135, at *11); *see Calcano*, 36 F.4th at 65 (considering factors of "definiteness of the plaintiff's plan to return" and "frequency of the plaintiff's travel near the defendant's business" in determining whether plaintiff "faces a real and immediate threat of future injury" (quoting *Kennedy*, 998 F.3d at 1233)); *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008) (considering "past frequency of [plaintiff's] visits and the proximity of defendants' restaurants to [plaintiff's]

19

home" when determining intent to return).  Intent to return is a "highly fact-sensitive inquiry." *Bernstein*, 621 F. App'x at 59 (first citing *Kreisler*, 731 F.3d at 187–88; and then citing *Camarillo*, 518 F.3d at 158); *see Valdez*, 2025 WL 3074254, at *4 ("*Kreisler* and *Calcano* set a case-by-case standard for determining what constitutes a reasonable likely intent to return based largely on past visits and proximity."); *Wahab v. White's Boots, Inc.*, No. 23-CV-9018, 2024 WL 3909083, at *12 (S.D.N.Y. Aug. 16, 2024) ("Post-*Calcano*, courts in this [d]istrict have engaged in fact-intensive inquiries to determine whether allegations like the ones in the instant [c]omplaint clear the intent-to-return bar impose by the Second Circuit.").  "[T]he Second Circuit's opinions in *Kreisler* and *Calcano* are helpful in distinguishing between plausible and implausible assertions of an intent to return to a particular location."  *Gannon*, 2023 WL 199287, at *3.

Plaintiff emphasizes the Court's obligation to accept the allegations in the Complaint as true.  (Pl.'s Opp'n 5, 9, 15–17.)  While correct, the Court "need not credit 'a legal conclusion couched as a factual allegation' or a 'naked assertion devoid of further factual enhancement,'" *Calcano*, 36 F.4th at 75 (quoting *Iqbal*, 556 U.S. at 678), nor can the Court ignore that the Complaint's allegations "parrot the court's language in *Kreisler*," *id.* at 76 ("Plaintiffs' conclusory invocations of the factors we found relevant in *Kreisler* are insufficient to establish standing.").

### 1.  Proximity to Plaintiff's residence

Plaintiff alleges that he "resides in Flushing" and "lives only several miles from [the Subject Property]."  (Compl. ¶¶ 1, 7.)  According to Baklajian, "Google Maps reports that the distance between Flushing, New York [where Plaintiff lives] and the [Subject Property] by car is approximately 6.6 miles."  (Def.'s Mem. 3; *see* Distance Depiction.)  "[A]ccording to the travel time estimates supplied by Google Maps, a morning car trip from Flushing to the [Subject

20

Property] is expected to take between [nineteen] and [twenty-one] minutes, while a morning trip by public transportation is expected to take between [thirty-nine] and [fifty-one] minutes." (Def.'s Mem. 3; *see* Distance Depiction.)

"Vaguely asserting that one lives in close proximity to a defendant's business and intends to be a customer in the future is not enough; the plaintiff's assertions must be accompanied by specific and individualized details." *Gannon*, 2023 WL 199287, at *3 (citing *Calcano*, 36 F.4th at 76–77); *see Calcano*, 36 F.4th at 76 ("Standing on its own, this bare allegation of so-called 'proximity' hardly supports an inference that [the plaintiff], who is blind, would 'immediately' make this inter-borough trip just to purchase braille gift cards from [the defendant's business].").

Plaintiff's assertion that he lives in the same borough as the Subject Property, the largest New York City borough by land area, is insufficient to support an inference of intent to return without more specific and individualized details connecting him to that neighborhood, especially when it could take him up to nearly an hour to travel to Astoria. *See Calcano*, 36 F.4th at 76 (finding lack of standing where one plaintiff stated he lived in Bronx, N.Y., "close to [d]efendant's retail store locate at 10 Columbus Circle, New York, N.Y.," but "depending on where [plaintiff] lives in the Bronx, which the complaint does not say, that address could be up to an hour away from [defendant's business]"); *Gannon*, 2023 WL 199287, at *4 (The plaintiff "does not provide sufficient evidence that he resides in close proximity to the property, merely asserting that he lives in the same county, i.e., the island of Manhattan."); *Hennesssy by and through Hennessy v. Poetica Coffee Inc.*, No. 21-CV-5063, 2022 WL 4095557, at *3 (E.D.N.Y. Sep. 7, 2022) ("Plaintiff's bare allegation that he resides in Kings County is insufficient to support a plausible inference that [the p]laintiff would return to [the d]efendants' business on Atlantic Avenue in Boerum Hill several times a year after it becomes fully accessible." (internal quotation marks and citation mitted)); *Dominguez v. Pizza Hut of Am., LLC*, No. 19-CV-10175,

21

2020 WL 3639977, at *3 (S.D.N.Y. July 6, 2020) (finding the plaintiff's allegation that he "resides within close proximity to at least one of [the d]efendant's physical locations" was conclusory); *cf. Kreisler*, 731 F.3d at 188 (holding that the plaintiff's residence "within several blocks of the [d]iner" supported an inference of intent to return).

Plaintiff's proffered connection to the neighborhood does not support his assertion that he "passes by [the Subject Property] at least once per week when he is doing errands, visiting family and friends throughout the borough, and looking to drink and eat out," and the Subject Property "is in a neighborhood that Plaintiff dines out two to three times per month." (Compl. ¶ 7.) These reasons do not connect Plaintiff to Astoria, Queens specifically, where the Subject Property is located, that would help explain why Plaintiff frequents such an area so far away from where he resides. Plaintiff does not allege anything distinctive about why he patronizes the neighborhood, alleging only that he visits "family and friends throughout *the borough*" and without discussing what routine errands he runs nearby. (*Id.*) This is insufficient to support standing. *Cf. Volfman v. Miss Du's Tea Shop, Inc.*, No. 24-CV-2973, 2025 WL 1852302, at *6 (S.D.N.Y. Apr. 18, 2025) (finding standing where plaintiff conceded that he lived approximately thirty-five minutes away from defendant's business but "explain[ed] that he is frequently in downtown Manhattan for work (approximately 3-5 times per month), and on other occasions (such as for family outings, shopping, and dinners)," described "what attracted him to [defendant's property]" in detail, and listed specific reasons he would return (internal quotation marks and citations omitted)), *report and recommendation adopted*, 2025 WL 1621628 (S.D.N.Y. June 9, 2025).

### 2.   Past patronage of the Subject Property

Plaintiff alleges he visited the Subject Property twice: once in the middle of October of 2024 and once on December 20, 2024. (Compl. ¶ 5.) While this factor is typically not analyzed

alone, instead considered in the general context of Plaintiff's relationship to the Subject Property, the Complaint's details of Plaintiff's past two attempts to visit the Subject Property support finding Plaintiff's plausible intention to return. *See Kreisler*, 731 F.3d at 186 (the complaint described the plaintiff's encounter with the defendant's diner in 2008 in detail). Most of the cases in this Circuit that do not find standing involve a complaint that lacks details and specificity regarding when a plaintiff visited the defendant's business — but Plaintiff does provide sufficient information regarding his visits. *See Calcano*, 36 F.4th at 76–77 (holding that the plaintiffs "cannot possibly show that they have suffered an injury that is 'concrete and particularized'" because they failed to "provide *any* details about their past visits or the frequency of such visits"); *Hennesssy*, 2022 WL 4095557, at *3 (the plaintiff failed "to provide *any* details about [the p]laintiff's previous attempt to access [the d]efendants' business" (internal quotation marks omitted)); *Stone Equities*, 2018 WL 1115135, at *11 (the plaintiff only alleged that he "visited the property which forms the basis of this lawsuit" but nothing more); *cf. Valdez*, 2025 WL 3074254, at *4 (finding standing as supported by a complaint that detailed the plaintiff's "long[] history of visiting the restaurant"). Thus, Plaintiff's past two visits attempting to visit the Subject Property, in addition to Plaintiff's stated "intent to return," does slightly weigh in favor of finding Plaintiff plausibly likely to return. *See Davis v. Wild Friends Foods, Inc.*, No. 22-CV-4244, 2023 WL 4364465, at *6–7 (S.D.N.Y. July 5, 2023) (the plaintiff's previous five visits supported finding intent to return); c*f. Stone Equities, LLC*, 2018 WL 1115135, at *11 ("[A] lack of specificity with regard to past patronage, or an interest in patronage, weighs against an inference that [the p]laintiff plausibly possesses an intent to return to the [p]roperty in the imminent future but for the alleged violations.").

23

### 3. Definitiveness of Plaintiff's plans to return to the Subject Property

Plaintiff asserts that he "[p]lans to return to the Subject Property to avail himself of the goods and services offered to the public at the Subject Property in the coming months," (Compl. ¶ 6), with "specific[] plans to visit this [Subject Property] this summer and autumn with family and friends for nights out, and holidays and events." (*Id.* ¶ 10.) Without more, these assertions are insufficient to establish a plausible intent to return to the Subject Property. *See Lujan*, 504 U.S. at 564 (A plaintiff's "profession of an intent to return to the places they had visited before — where they will presumably, this time, be deprived . . . — is simply not enough" to establish standing."); *Calcano*, 36 F.4th at 76 (the plaintiffs alleged that they "intend[ed] to immediately purchase at least one store gift card" without providing support as to "why they want to purchase braille gift cards . . . so urgently"). It is not enough that Plaintiff has visited the Subject Property before and that he alleges that he "plans to return." *See Calcano*, 36 F.4th at 76 ("Plaintiffs' vague assertions that they have been customers at defendant's businesses on prior occasions . . . [do not] nudge their claims 'across the line from conceivable to plausible.'" (internal quotation marks and citation omitted) (quoting *Iqbal*, 556 U.S. at 680)); *Gannon*, 2023 WL 199287, at *4 (the plaintiff failed to "explain why he wanted to access the property in the first place or why he would want to access it in the future," only "imply[ing] that he may want to patronize [the defendant's business] at some point in the future"); *Hennesssy*, 2022 WL 4095557, at *3 (finding the plaintiff's alleged "inten[t] to patronize [the d]efendants' business several times a year after it becomes fully accessible" was insufficient to plead standing (internal quotation marks and citation omitted)).

Plaintiff does not explain in the Complaint why he intends to visit or what is distinctive about the business located at the Subject Property. *See Hua Da Inc.*, 2023 WL 2664012, at *3

(finding that the plaintiff "fail[ed] to explain what is distinctive about [the d]efendants' delicatessen and grocery — one of literally thousands on the island of Manhattan" and therefore did not plead a plausible intent to return (internal quotation marks and citation omitted)); *Gannon v. JBJ Holdings LLC* (*JBJ Holdings LLC*), No. 22-CV-1674, 2022 WL 6698222, at *3 (S.D.N.Y. Oct. 11, 2022) (standing lacking where the plaintiff failed to "allege what is distinctive about [the d]efendants' donut shop" where "[t]here are many donut shops on the island"); *Stone Equities*, 2018 WL 1115135, at *11 (finding insufficient pleading where the plaintiff stated that he "plans to return to the [p]roperty once the barriers to access are corrected and the facility becomes fully accessible" and "desires to visit [the defendant's business] not only to avail himself of the goods and services offered to the public at the [p]operty, but to assure himself that this [p]roperty is in compliance with the ADA"); *cf. Brown v. Lay Win Herbal, Inc.*, No. 24-CV-8114, 2025 WL 3274560, at *6 (S.D.N.Y. Nov. 24, 2025) (finding the plaintiff's "interest in patronizing [the defendant's business] in particular: it is a 'unique Chinese medicine clinic' that offers acupuncture services and herbal remedies" supported a reasonable inference that he intends to return), *report and recommendation adopted*, 2025 WL 3633500 (S.D.N.Y. Dec. 15, 2025); *Valdez*, 2025 WL 3074254, at *4 (finding the plaintiff's "claims [that] she is fond of and has cravings for [defendant's] 'Boneless Fried Chicken Crackling' and 'French Fries'" demonstrate plausible intent to return); *Volfman*, 2025 WL 1852302, at *6 (finding sufficient allegations where the plaintiff "describe[d] in detail what attracted him to [the defendant's business] (the healthy, low calorie fruit drinks and teas, described in online reviews as refreshing, an absolute delight, and just perfect) and why he wants to return (to try the well-reviewed Purple Taro Bubble Milk Tea)" (internal quotation marks and citations omitted)); *Davis*, 2023 WL 4364465, at *6–7 (finding the plaintiff plausibly alleged intent to return by explaining that he "enjoys honeyed butter," "is generally interested in organic food as part of his

25

diet," "was interested in trying a new brand to enjoy a healthy and tasty new food," and was particularly interested in "[the d]efendant's honey sunflower butter" because it was "a distinctive product").

Moreover, Plaintiff unsatisfactorily asserts that he has "set forth a plausible, credible, and even probable plan to visit the restaurant" in the future, with "plans to return . . . in the coming months," specifically "this summer and autumn with family and friends for nights out, and holidays and events."  (Pl.'s Opp'n 15; Compl. ¶¶ 6, 10.)  "Such 'some day' intentions — without any description of concrete plans, or indeed even any specification of when the some day will be — do not support a finding of the actual or imminent injury' that Article III requires." *Harty*, 28 F.4th at 443 (quoting *Lujan*, 504 U.S. at 564) (finding lack of "sufficiently imminent" injury where the plaintiff alleged that he intended to utilize the defendant's website in "the near future"); *Gannon*, 2023 WL 199287, at *4 (finding the plaintiff's assertion that he wanted to patronize the defendant's business "at some point in the future, but that he '[did] not know when' . . . [was] insufficient to establish injury absent a description of concrete plans"); *cf. Spring Valley Marketplace LLC*, 2017 WL 108062, at *8 (finding the plaintiff's allegation to return in June or July of 2016, supported by his alleged professional and family connections, constituted "more than a vague 'some day' intention to return.").  Nor can the Court assume Plaintiff intends to return based on his past two attempted visits to the Subject Property.  *See Lopez v. Peapod, LLC*, No. 19-CV-9906, 2021 WL 1108559, at *4 (S.D.N.Y. Mar. 23, 2021) ("Courts . . . have declined to find an intent to return even when a plaintiff pleads that they had visited a defendant's store before and will do so again in the future."); *see also Bernstein*, 621 F. App'x at 58–59 (finding the plaintiff's intent to return to Central Park could not solely be based on the fact that he visited the park thirty times a year for the past ten years); *Ortiz v. Westchester Med. Ctr. Health Care Corp.*, No. 15-CV-5432, 2016 WL 6901314, at *9 (S.D.N.Y. Nov. 18, 2016)

(holding the plaintiff's identification of a single past visit to the accused premises "d[id] not, without engaging in impermissible 'indefinite speculation,' plausibly bridge the gap between a mere possibility and a real and imminent threat of harm as required to support the inference that it is 'reasonably foreseeable' instead of simply conceivable" that plaintiff would return). Plaintiff's self-described "probable plans" do not establish "concrete" injury and plausible intent to return.

### 4. Frequency of travel in the area of the Subject Property

Plaintiff states he "passes by the [Subject Property] at least once per week when he is doing errands, visiting family and friends throughout the borough, and looking to drink and eat out," and the Subject Property "is in a neighborhood that Plaintiff dines out two to three times per month." (Compl. ¶ 7.) In support, Plaintiff alleges in the Complaint that he has "partaken at, and in, nearly all of the neighboring restaurants surrounding the [Subject Property] that are without obstructions about twice per month, including but not limited to Escola Corp's Restaurant, Psari, Mad Donkey Bar & Grill and Arepas Grill." (Id.) Plaintiff's connection to the "neighborhood" is still unclear given he does not reside in close proximity to the Subject Property, he "visit[s] family and friends throughout the *borough*," and he "passes by [the Subject Property] . . . when he is *doing errands*."[10] (Id. ¶ 7 (emphasis added).)

However, in the Complaint, Plaintiff specifies his frequent visits near the Subject Property, noting that he "passes by [the Subject Property] at least once per week" and dines in the neighborhood "two to three times per month," including at several neighboring restaurants all notably less than two blocks away from the Subject Property. (Id.) Plaintiff's allegations just barely cross the threshold to support a plausible intention to return. *See Kreisler*, 731 F.3d at 188

---

[10] *See supra* Section II.b.ii.1.

(finding the plaintiff's allegation that he passed by the diner three to four times per week and "frequent[ed] diners in his neighborhood often" supported standing); *Valdez*, 2025 WL 3074254, at *4 (finding a totality of factors supported finding intent to return where the plaintiff pleaded "she lives 35 minutes away from the restaurant" and "she visits the Upper West Side at least once a month to visit her friends and family who live there"); *Woods*, 2023 WL 6442064, at *4 (reasonably inferred plausible intent to return where the defendant's apartment building housed several of the plaintiff's friends and family members and have "asked him to come visit their apartments several times"); *cf. Gannon*, 2023 WL 199287, at *4 (noting that the plaintiff's lack of assertion that he "frequent[ed] other bakeshops in the neighborhood" supported the court finding the plaintiff lacked standing); *Hennesssy*, 2022 WL 4095557, at *3 (finding the plaintiff's allegation that he "frequent[ly] travels to the area where [the] defendant's business was located," without more, did not allow the court to conclude that the plaintiff had standing (internal quotation marks omitted) (alteration in original)); *Stone Equities*, 2018 WL 1115135, at *12 (holding the plaintiff's allegations that he "regularly visits the area near [the d]efendant's shopping center to visit friends, enjoy restaurants and other retail establishments" and he "travels to New Yok to visit with friends and family who reside in New York" insufficient to support a plausible inference). Plaintiff's "demonstrated specific and geographic and habitual reasons why he would return to the [Subject Property] support standing." *See Gannon v. Yan Ping Ass'n* (*Yan Ping Ass'n*), No. 22-CV-1675, 2023 WL 6292533, at *3 (S.D.N.Y. Sep. 22, 2023) (describing the plaintiff and the court's holding in *Kreisler*).

### 5. Complaint's boilerplate nature

The Court's analysis is also impacted by the boilerplate nature of the Complaint because the Court "cannot ignore the broader context of Plaintiff['s] transparent cut-and-paste and fill-in-the-blank pleadings." *Calcano*, 36 F.4th 68; *see Sookul v. Fresh Clean Threads, Inc.*, 754 F.

Supp. 3d 395, 402–03 (S.D.N.Y. 2024) (summarizing that "*Calcano* and its progeny . . . are concerned with uncareful ADA plaintiffs who fail, in their haste to file more lawsuits, to submit a complaint with allegations that are coherent and detailed enough to 'nudge their claims across the line from conceivable to plausible'" (internal quotation marks omitted) (quoting *Calcano*, 36 F.4th at 76)); *Dominguez*, 2020 WL 3639977, at *4 ("'There is nothing inherently wrong with filing duplicative lawsuits against multiple defendants if the harms to be remedied do [in fact] exist and are indeed identical.  But those who live by the photocopier shall die by the photocopier' if they 'fail[] specifically to assert any concrete injury.'" (alterations in original) (quoting *Mendez v. Apple Inc.*, No. 18-CV-7550, 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019))).  While the Court does not factor Plaintiff's status as an ADA tester into its analysis,[11] nearly all of the complaints Plaintiff has filed in his seventy-nine cases are carbon-copy complaints using identical language to state the same conclusory contentions against dining establishments all across this District and the Southern District and allege an indistinguishable laundry list of ADA violations.  (*See* Party Search.)  *See Yan Ping Ass'n*, 2023 WL 6292533, at *3 (finding the plaintiff "undermines his own standing claims by alleging that he has an

---

[11]  Plaintiff dedicates several paragraphs of his briefing to "Defendant's attack on [the] veracity of initial pleadings based on a purported 'ADA tester' label."  (Pl.'s Opp'n 16–17.)  While Plaintiff could accurately be described as an ADA tester, (*see* Party Search, annexed to Poll. Decl. as Ex. A, Docket Entry No. 23-2 (consisting of a non-exhaustive list of cases where Plaintiff brought an ADA suit, totaling seventy-nine cases)), the argument and term "ADA tester" is notably absent from Baklajian's brief in support of her motion to dismiss.  (*See generally* Def.'s Mem.)  As noted above, the Court's analysis is not impacted by Plaintiff's status as an ADA tester, nor does the Court take issue with the sheer volume of lawsuits he has filed.  "The law is clear that testers can have standing, but even testers have to show that they have suffered an Article III injury in fact." *Harty v. W. Point Realty, Inc.* (*Harty*), 28 F.4th 435, 444 n.3 (2d Cir. 2022).

29

immediate intent to return to disparate and seemingly unremarkable establishments all across Manhattan").[12]

The Complaint in this case almost exactly mirrors the *Court Diner* Compl. but incorporates a few changes — notably adding specific details about the Subject Property's inaccessible entrance, which Plaintiff alleged to directly have encountered, and about Plaintiff's plans to return.  (*Compare* Compl. ¶¶ 5, 6, 7, 10 to *Court Diner* Compl. ¶¶ 4, 5, 6, 14.)[13]  *See Hashimi v. Court Diner Inc.*, No. 23-CV-5811, 2024 WL 4225781 (E.D.N.Y. Sep. 18, 2024). While those changes result in a slightly different outcome —*Court Diner* found Plaintiff failed to allege past injury, but here the Court finds Plaintiff has sufficiently pleaded past injury — the

---

[12]  Analyzing the complaints in those other cases, there appear to be three "templates" — the first was used primarily in 2018 and 2019 cases, which contain minimal factual allegations, including no specific dates of visits, no specific allegations regarding his interaction with the ADA violations, little or no discussion of proximity of the subject property, and no concrete plans to return.  *See, e.g.*, Compl., *Hashimi v. Yumi Delite, Inc.*, No. 19-CV-547 (E.D.N.Y. Jan. 29, 2019); Compl., *Hashimi v. Muscle Maker Corp., LLC*, No. 18-CV-10474 (S.D.N.Y. Nov. 12, 2018).  Later versions track the *Court Diner* Compl., which adds slightly more detail including Plaintiff's visiting date, plans to return, details about the subject property, and restaurants in the surrounding area Plaintiff has patronized.  *See, e.g.*, Compl., *Hashimi v.* Mumford, No. 24-CV-2769 (S.D.N.Y. Apr. 12, 2024); Compl., *Hashimi v. Dada Bada Realty*, No. 23-CV-7196 (S.D.N.Y. Aug. 15, 2023).  Following the court's decision in *Court Diner* on September 18, 2024 dismissing the case for failure to plead past injury, it appears that Plaintiff once more revised his template to include more details about the inaccessible entrances he encountered at the subject properties.  *Compare Court Diner* Compl. to Compl. ¶ 2, *Hashimi v. Pancyprian Ass'n Inc.*, No. 24-CV-8381, (E.D.N.Y. Dec. 6, 2024) (same).  In some other recent complaints, Plaintiff even includes more detail than he does in this case (such as including specific details about the defendant's business), while mentioning that he has plans to return in the "summer and fall" and frequents restaurants within a one block radius.  *Compare* Compl. ¶¶ 4, 7, 10 to Compl. ¶¶ 9, 12, 15, *Hashimi v. Hoxha*, No. 25-CV-2682 (E.D.N.Y. May 15, 2025) (detailing that the subject property "is a Colombian restaurant offering a variety of traditional dishes, including bandeja paisa and parrilladas" and "Plaintiff appreciates the quality of the cuisine and the ambiance").

[13]  *See supra* n.9 for a discussion comparing the Compl. with the *Court Diner* Compl.

Court finds these boilerplate complaints undermine Plaintiff's alleged intention to return.[14]  *See*

*Dominguez v. Athleta*, No. 19-CV-10198, 2021 WL 918314, at *3 (S.D.N.Y. Mar. 10, 2021)

("Plaintiff has filed at least [twenty-four] nearly identical complaints against other retailers in

this district, which undermines the sincerity of [the p]laintiff's alleged intent to return to the

[d]efendant's business."); *Calcano v. Cole Haan LLC* (*Cole Haan*), No. 19-CV-10440, 2021 WL

849434, at *3 (S.D.N.Y. Mar. 5, 2021) (the plaintiff's "other ADA litigation may 'undercut the

sincerity' of his intent to return").

    "Although [the court] might excuse a stray technical error or even credit an odd

allegation standing alone as an idiosyncratic preference — to do so here in light of the

cumulative implausibility of [the] plaintiffs' allegations would be burying our heads in the sand."

*Calcano*, 36 F.4th at 77.  "'[J]udicial experience and common sense' suggest that the errors,

oddities, and omissions in the complaints are a result of their mass production, and they render

[the plaintiff's] cookie-cutter assertion of standing implausible." *Id.* (first alteration in original)

(quoting *Iqbal*, 556 U.S at 679).  There are numerous grammar errors, erratically defined terms

(including the use of some that are never defined), inconsistent allegations, and incongruent

pleadings in the Complaint and Plaintiff's briefing.[15]  (Compl. ¶¶ 5–10, 14; *see generally* Pl.'s

---

[14]  The court in *Court Diner* did not reach the issue of Plaintiff's intent to return having held he failed to plead past injury.  *Court Diner*, 2024 WL 4225781, at *3.

[15]  In addition to the large errors explained *infra*, some other substantive examples include: (1) Plaintiff's discussion of "Defendant's attack on veracity of initial pleadings based on a purported 'ADA tester' label . . ." but that term never appears in Baklajian's memorandum in support, (*see* Pl.'s Opp'n 16; *see generally* Def.'s Mem.); (2) asserting that the Complaint explains Plaintiff's reasoning for his visits but it is never mentioned, (*see* Pl.'s Opp'n 8); (3) asking the Court to credit Plaintiff's "testimony at trial" while this memorandum and order deals with Baklajian's motion to dismiss, (*see* Pl.'s Opp'n 18); and (4) arguing that there are "material facts in genuine dispute," a standard for summary judgment and not a motion to dismiss, (*see* Pl.'s Opp'n 9).

Opp'n.)  While more passable than the *Court Diner* Compl., which alleges unrelated ADA violations such as those related to the women's bathroom, the Complaint similarly lists a countless number of interior ADA violations without pleading how Plaintiff came to learn of those violations.  (*Compare* Compl. ¶ 16 with *Court Diner* Compl. ¶ 14.)  Similarly, Plaintiff alleges exterior seating ADA violations without mentioning that he observed those when he was at the Subject Property's entrance or resolving the discrepancy that it likely was too cold to eat outside "in the middle of October" and unquestionably too cold on December 20, 2024.  (*See* Compl. ¶¶ 10, 16.)

Most notable is the fact that Plaintiff's opposition briefing (1) identifies the Plaintiff is as "Samuel Lopez," not Abeth Hashimi, in both the caption and throughout the body of the brief, (2) discusses the "greater Brooklyn area" while the allegations in the Complaint relate to Plaintiff's residence and the Subject Property's location in Queens, and (3) incorrectly names the Defendants Haig and Emma Baklajian individually, not in their capacity as trustees of the Haig Baklajian and Emma Baklajian Revocable Living Trust, dated August 1, 2021.[16]  (*See generally* Pl.'s Opp'n; *see* Def.'s Reply at 6 n.1.)  These inconsistencies and mistakes serve to undermine the plausibility of Plaintiff's allegations.  *See Calcano*, 36 F.4th at 77 (finding "[the p]laintiff's cookie-cutter assertion of standing implausible" given the numerous incongruencies and impossible assertions in the complaint); *Rendon v. Berry Global Inc.*, No. 22-CV-10420, 2023

---

Some non-substantive examples include: (1) punctuation errors, such as continuing sentences after periods, (*see* Compl. ¶ 6 (" . . . which exist within the Facility.including but not limited to . . . ")); (2) varying term use to reference the Subject Property, as it is defined in the Complaint as the Subject Property or "the Facility," but also called the "subject location," the "subject premises," or plainly calling it Café Triskell; and (3) the misuse of singular and plural versions of plaintiff and defendant, while there only exists one Plaintiff and three Defendants in this case.

[16]  *See supra* n.3.

WL 3724795, at *6 (S.D.N.Y. May 30, 2023) (finding the complaints filed in over three hundred ADA actions across the country, including over forty in New York, contained the same "cut-and-paste and fill-in-the-blank" allegations "served to underscore the implausibility of [the p]laintiffs' claims"); *Gannon*, 2023 WL 199287, at *4 (considering that the plaintiff had "filed twenty-six cases, including this one, in this [d]istrict since January 14, 2022, each filed by the same attorney" and "[t]he complaint in the instant case contain[ed] general and conclusory assertions that are almost identical to the language in the other twenty-five cases filed by [plaintiff] and his attorney" in its standing analysis); *Hennesssy*, 2022 WL 4095557, at *3 (noting that the plaintiff's seventy-nine other ADA actions in this District which "exhibit the same 'cut-and-paste and fill-in-the-blank' approach that existed in *Calcano*, using the same language, to state the same conclusory allegations, and with the same typographical errors" (citations omitted)); *Dominguez*, 2020 WL 3639977, at *4 (finding lack of a particularized and concrete injury where the plaintiff "filed dozens of substantially identical [generic] complaints in this district against various retail and dining establishments").

For these reasons, the Court finds the totality of the circumstances fails to indicate that Plaintiff has a plausible likelihood of intent or desire to return to the Subject Property. *See Gomez v. W. Shore Inn Rest., Inc.*, No. 22-CV-277, 2023 WL 5337864, at *6–7 (E.D.N.Y. June 30, 2023) (finding the plaintiff "failed to plausibly allege that he intends to return to the [s]ubject [p]roperty" under a "highly fact-sensitive inquiry" where the factors weighed against finding standing; *JBJ Holdings LLC*, 2022 WL 6698222, at *3 ("[U]nable to draw an inference that [the plaintiff] would return to the [p]remises in the future," the court found the plaintiff "failed to sufficiently allege standing under the ADA."); *Access 4 All, Inc. v. G & T Consulting Co., LLC*, No. 06-CV-13736, 2008 WL 851918, at *4 (S.D.N.Y. Mar. 28, 2008) ("[C]ourts have found that plaintiffs do not have standing to seek injunctive relief under the ADA when they fail to show a

33

plausible intent or desire to return to the place where they had previously encountered an ADA violation . . . .").  Thus, the Complaint fails to sufficiently plead an "actual or imminent" threat of injury to Plaintiff and ultimately Plaintiff does not have standing to seek injunctive relief.  *See Lujan*, 504 U.S. at 560–64.

### c.    The Court grants Plaintiff leave to file an amended complaint under Rule 15

While Baklajian's briefing is silent as to the issue, Plaintiff requests leave to amend the Complaint "should the Court desire further factual enhancement."  (*See* Pl.'s Opp'n 17–18; *see generally* Def.'s Reply.)  Plaintiff argues Rule 15 of the Federal Rules of Civil Procedure "emphasizes the importance of having the action resolved on the merits" and thus "motions to amend typically are 'accorded a broad and liberal treatment . . . [that] serves the integrity and fairness of the judicial process by promoting the search for the truth.'"  (Pl.'s Opp'n 17 (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993).)

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'"  *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see also MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) ("A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." (internal quotation marks omitted)); *Dalewitz v. Procter & Gamble Co.*, No. 22-CV-7323, 2025 WL 764023, at \*2 (S.D.N.Y. Mar.

34

11, 2025) ("[A]bsent a showing of prejudice or bad faith, practice in this Circuit is to grant a motion to amend." (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993))).

Plaintiff may be able to cure the deficiencies in the Complaint and is therefore granted an opportunity to do so. *See, e.g.*, *Gannon*, 2023 WL 199287, at \*4–5 (granting leave to amend to pleadings in an effort to establish standing under the ADA); *Dominguez*, 2020 WL 3639977, at \*4 (same). Because leave to amend should be freely given under Rule 15 of the Federal Rules of Civil Procedure and no showing of prejudice or bad faith has been made, the Court grants Plaintiff leave to file an amended complaint. *See Normal v. Experian Info. Sols., Inc.*, No. 23-CV-9245, 2024 WL 3890103, at \*1 (S.D.N.Y. Aug. 20, 2024) ("In this Circuit, '[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.'" (alteration in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991))).

## III. Conclusion

For the foregoing reasons, the Court dismisses Plaintiff's Complaint and grants Plaintiff leave to file an amended complaint. Any amended complaint must be filed on or before March 18, 2026.

Dated: March 4, 2026
       Brooklyn, New York

                                        SO ORDERED:


                                        _____/s/MKB_____
                                        MARGO K. BRODIE
                                        United States District Judge